## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PFF BANCORP, INC., <u>et al.</u>,[1]<br><br><br>                   Debtors. | Chapter 11 Cases<br><br>Case No. 08-13127 (KJC)<br><br>Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS OF PFF BANCORP. INC., <u>et al.</u><br><br><br>    Plaintiff,<br><br><br>    v.<br><br><br>ROBERT L. GOLISH<br><br><br>    Defendant. | <br><br><br><br><br><br>Adversary Case No. _____ |

## OBJECTION BY THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS TO THE CLAIM OF
## ROBERT L. GOLISH [CLAIM NO. 33] AND COUNTERCLAIM

The Official Committee (the "<u>Committee</u>") of Unsecured Creditors of the above-captioned

debtors and debtors-in-possession (the "<u>Debtors</u>") files this objection (the "<u>Objection</u>") pursuant

to, *inter alia*, 11 U.S.C. § 502(b), and Rules 3001, 3007 and 7001 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the Claim of Robert L. Golish ("<u>Golish</u>" or

the "<u>Claimant</u>") against PFF Bancorp, Inc. ("<u>PFF Bancorp</u>") [Claim No. 33] ("<u>Claim 33</u>"), a copy

---

[1] The Debtors are the following 5 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PFF Bancorp, Inc. a Delaware corporation (1623), Glencrest Investment Advisors, Inc., a Delaware corporation (1405), Diversified Builder Services, Inc., a California corporation (4416), PFF Real Estate

of which is attached hereto as **Exhibit A**.  Solely as a defense to the payment of Claim 33 and not to seek any affirmative monetary recovery, the Committee asserts a counterclaim under Section 548 of the Bankruptcy Code to set aside PFF Bancorp, Inc.'s obligation under the Agreement to Claimant as a fraudulent transfer and/or conveyance as more fully set forth below (the "Counterclaim") and alleges as follows:

## JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B), (C), (H) and (O).

2.    The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 507(a)(4), 502(b) and 548.  The relevant rules applicable to this adversary proceeding are Bankruptcy Rules 3001, 3007 and 7001.

## BACKGROUND

### A.  The Parties

3.    On December 5, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4.    Prior to the Petition Date, Debtor PFF Bancorp was the parent and holding company for PFF Bank & Trust ("PFF Bank"), a federally-chartered savings institution, and subsidiaries thereof, including Pomona Financial Services, Inc., and Diversified Services, Inc.

5.    PFF Bancorp was also the direct or indirect parent of non-banking subsidiaries, including its affiliated Debtors and debtors-in-possession.

6.    Currently, Debtor PFF Bancorp owns and operates each of its affiliated co-debtors and debtors-in-possession solely for the purpose of liquidating their estates for the benefit of

Services, Inc., a California corporation (0728) and Glencrest Insurance Services, Inc., a California corporation (3118).

131350.01600/21925381v.3

creditors.

7.      Prior to November 21, 2008, PFF Bank was a full-service community bank that offered a wide range of financial products and services, including mortgages, consumer, and small business loans, through 38 full-service banking branches throughout Southern California. Through various of the other Debtor subsidiaries, Bancorp also provided wealth management services to customers, and financing and consulting services to builders and land developers.

8.      On November 21, 2008, the Office of Thrift Supervision closed PFF Bank and appointed the FDIC as Receiver.  Subsequent to the closure, a subsidiary of U.S. Bancorp acquired all of the deposit accounts and all of the loans of PFF Bank from the FDIC.

9.      On December 17, 2008, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Delaware appointed the Committee.

10.     On November 24, 2010, the Bankruptcy Court entered an Order approving a stipulation between the Debtors and the Committee by which the Court approved that the Committee, acting on behalf of the Debtors, had standing to pursue certain claims that the Debtors may have against the recipients of transfers that may be avoidable under chapter 5 of the Bankruptcy Code, including the claims raised herein.

11.     Golish served as Executive Vice President, Chief Administrative Officer, Chief Information Officer, and General Counsel of PFF Bank beginning in June 2006.  Prior to June 2006, Golish had served as Senior Vice President and Senior Counsel of PFF Bank since 1994 and Chief Information Officer of PFF Bank since 1999.

12.     Golish resigned from his positions at the PFF Bancorp and PFF Bank effective December 1, 2008, although the date on which such resignation was actually made is unknown. (*See* Ex. A.)

---

The address of each of the Debtors is 9377 Milliken Avenue, Rancho Cucamonga, California 91730.

131350.01600/21925381v.3

13.    In a letter to the Board of Directors to PFF Bancorp, dated December 1, 2008, Golish resigned from his positions with PFF Bancorp, and stated that under the terms of the Amended and Restated Termination and Change in Control Agreement by and between PFF Bancorp and Golish,[2] dated September 11, 2007 (the "Agreement"), Golish was submitting a "Notice of Termination" pursuant to sections 2(b)(ii), (iii)(B), (v), and (vi), 3, and 5 of the Agreement "following the change in control that occurred when the FDIC seized PFF Bank & Trust on November 21, 2008." (*See* Ex. A.)

14.    Golish also demanded "payment of amounts and benefits due to me pursuant to the provisions of the Agreement." (*Id.*)

**B. The Claim**

15.    By order dated June 4, 2009 [Docket No. 249], the Court set a deadline of July 21, 2009 by which parties, including governmental units, must file proofs of claim.

16.    On or about July 9, 2009, Golish filed Claim 33.

17.    Claim 33 was filed in the amount of $878,841.00 for "Employment Services." (Ex. A at § 2.)    No addendum to Claim 33 was attached further setting forth the bases for, and calculation of, the Claim.    However, Golish did attach a copy of:    (1) the Agreement; (2) a letter from PFF Bank & Trust to Golish, dated January 27, 2009; and (3) Golish's Resignation and Notice of Termination letter to the Board of Directors of PFF Bancorp, dated December 1, 2008.

18.    In the event of a "Change in Control" (as such term is defined in the Agreement), Golish purportedly was to become entitled to elect to voluntarily terminate his employment at any time within ninety (90) days following the Change in Control, and PFF Bancorp (the Holding Company) was to pay him "an immediate lump sum equal to two (2) times [his] average annual compensation for the three (3) preceding taxable years …." (Ex. A, Agreement at § 3(a).)

---

[2] Golish's letter stated that PFF Bank was party to the Agreement, but that appears to be incorrect.

131350.01600/21925381v.3

19.    However, the Agreement also provides for a global exception to the payment of any amounts attributable to a so-called "Change in Control," namely that, in the event that PFF Bank is not in compliance with its minimum capital requirements or if the payments under the "Change in Control" provision would cause PFF Bank's capital to be reduced below its minimum regulatory capital requirements, such payments shall be "deferred until such time as [PFF Bank] or [the] successor thereto is in capital compliance." (Ex. A, Agreement at § 3(a).) PFF Bank was not and continues not to be in capital compliance.

<u>**OBJECTIONS TO CLAIM 33**</u>

A.    **Claim 33 is Unenforceable Against PFF Bancorp under Bankruptcy Code Section 502(b)(1)**

20.    Section 502(b)(1) of the Bankruptcy Code provides that "the court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, **except** to the extent that – (1) such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." (Emphasis added.)

21.    Claim 33 is unenforceable against PFF Bancorp because Claim 33 fails to state a claim or provide any facts supporting the amount claimed.  A global exception to the payment of Claim 33 exists.  Further, the Employment Agreement should be set aside, as more fully set forth in the Counterclaim, pursuant to Section 548(a)(1)(B)(iv) as a fraudulent conveyance/transfer and as such the Agreement is unenforceable against the Debtor and its estate.

a.    **The Agreement Contains A Global Exception to Payment of Any Obligations**

22.    As detailed above, the Agreement contains a global exception to payment of any monies under its terms.  This exception renders the obligations of PFF Bancorp under the

131350.01600/21925381v.3

Agreement null and void upon the occurrence of certain circumstances.  First, any payments owed to Golish as a result of the occurrence of a "Change in Control" (as defined in the Agreement) "shall be deferred" and shall continue to be "deferred" so long as PFF Bank is out of compliance with its minimum capital requirements or if such payments would cause PFF Bank's capital to be reduced below its minimum regulatory capital requirements.  (*See* Ex. A at § 3(a).)  PFF Bank was deemed "undercapitalized" by the OTS, its primary regulator, as of October 31, 2008.[3]  As a direct result of that undercapitalization, PFF Bancorp and PFF Bank were placed into Receivership, and its banking assets were sold and their Debtor affiliates are now in Chapter 11 liquidation.  Given the foregoing, there is no apparent likelihood that PFF Bancorp or any successor will return to being adequately capitalized under any regulatory guideline.  Therefore, PFF Bancorp does not owe any obligations to Golish under the "Change in Control" provision of the Agreement, and any claims that Golish may have against PFF Bancorp or PFF Bank under the Agreement, are unenforceable.

      **b.  Claim 33 is unenforceable because the Agreement is unenforceable as the Debtor's incurrence of the obligation thereunder is avoidable pursuant to <u>Section 548 of the Bankruptcy Code.</u>**

23.      As set forth more fully below in the Counterclaim, the Agreement is unenforceable

---

[3] According to PFF Bancorp's 10-Q filed November 10, 2008:

> As a federally chartered savings institution, the Bank is subject to extensive regulation, examination and supervision by the Office of Thrift Supervision ("OTS") and other federal banking authorities. Effective with the filing of our Thrift Financial Report on October 30, 2008 for the quarter ended September 30, 2008, the Bank was considered "undercapitalized" under OTS regulations. As a result, the Bank is subject to certain mandatory restrictions under the Prompt Corrective Action provisions of the Federal Deposit Insurance Act, many of which the Bank was already subject to pursuant to OTS directive and the memorandum of understanding that the Bank entered into with the OTS in June 2008, such as limits on capital distributions and growth restrictions. In addition, as a result of its undercapitalized status, the Bank is no longer eligible to accept, renew or rollover any brokered deposit (of which the Bank has none as of September 30, 2008) and is required to file with the OTS a capital restoration plan setting forth (i) the steps necessary for the Bank to become adequately capitalized, (ii) the levels of capital to be

against the Debtor's estate because the Debtor's obligations incurred thereunder are subject to

avoidance pursuant to Section 548 of the Bankruptcy Code.  Consequently, PFF Bancorp's estate

has a complete defense to the payment of any obligations that might actually be due and owing to

Golish under the Agreement.

**B.  In The Alternative, If Claim 33 Is Deemed To Be Enforceable, Bankruptcy Code Section 502(b)(4) Limits Golish's Recovery Under the Agreement**

24.    Section 502(b)(4) of the Bankruptcy Code provides:

> . . . the court, after a notice and a hearing, shall determine the
> amount of [a] claim in lawful currency of the United States
> as of the date of the filing of the petition, and shall allow
> such claim in such amount, except to the extent that   . . . if
> such claim is for services of an insider or attorney of the
> debtor, such claim exceeds the reasonable value of such
> services.

25.    Section 502(b)(4) requries that claims must be disallowed to the extent they seek

more than reasonable value for services performed by an insider.[4]   While 502(b)(4) speaks in

terms of "services" rendered, 502(b)(4) applies to damages for breach of an employment contract

as well.  *See* <u>In re Allegheny Intern., Inc.</u>, 158 B.R. 332 (Bankr. W.D. Pa. 1992) (applying

502(b)(4) cap to claim for damages arising from debtors' breach of an employment contract).

Furthermore, once a party in interest places the value of such an insider claim in question, the

burden shifts to the insider/claimant to prove the inherent fairness of the transaction to the debtor.

<u>In re Marquam Inc. Corp.</u>, 942 F.2d 1462, 1465 (9th Cir. 1991), *cert denied sub nom*. Erwin v.

Brewer, 506 U.S. 1028, (1992) ("When the validity of an insider's contract with a corporation is at

issue, the burden is on the insider 'not only to prove the good faith of the transaction but also to

---

attained during each year the plan will be in effect and (iii) how the Bank plans to comply
with the mandatory restrictions imposed under the Prompt Corrective Action provisions…

[4] An "insider" is defined under section 101(31) of the Bankruptcy Code to mean (in pertinent part) directors, officers,
persons in control of a debtor as well as a relative of any of the foregoing parties.  A "relative" is defined under the
section 101(45) of the Bankruptcy Code to mean any "individual related by affinity or consanguinity within the third

show its inherent fairness from the viewpoint of the corporation and those interested therein.'" (quoting <u>Pepper v. Litton</u>, 308 U.S. 295, 306 (1939))).

26.     Courts have held that claims of insiders are subject to strict scrutiny. *See, e.g.*, <u>In re Tri-O-Clean, Inc.</u>, 230 B.R. 192 (Bankr. S.D. Fla. 1998); <u>In re Russell Cave Co., Inc.</u>, 253 B.R. 815 (Bankr. E.D. Ky. 2000); In re All-American Auxiliary Ass'n, 95 B.R. 540 (Bankr. S.D. Ohio 1989); <u>In re Main, Inc.</u>, 213 B.R. 67 (Bankr. E.D. Pa. 1997), *aff'd in part, rev'd in part on other grounds*, 226 B.R. 140 (E.D. Pa. 1998), *aff'd in part, rev'd in part*, 192 F.3d 88 (3d Cir. 1999). As a result, where the claim of an insider fails to state an entitlement under an employment arrangement, such a claim must be disallowed. *See* <u>In re Lani Bird, Inc.</u>, 129 B.R. 203 (Bankr. D. Haw. 1991) (holding that CEO and sole stockholder of corporate debtor failed to establish entitlement to salary from debtor under 502(b)(4) where none of the debtor's financial records documented such entitlement; obligation of debtor to insider must be established in first instance by credible and reliable evidence and if debt, liability or obligation of debtor to claimant is not so established, claim must be disallowed).

27.     Golish—a former officer of PFF Bancorp—is an "insider" under the Bankruptcy Code.  Claim 33 is presented with no evidentiary support for the amount claimed beyond the Agreement itself.  While the Agreement provides for the terms of Golish's employment and termination thereof, Claim 33 is devoid of any explanation as to the calculation of alleged damages (claim) by Golish.  Accordingly, given the heightened scrutiny to which Claim 33 must be subjected and, further, given the total absence of proof offered in connection with Claim 33, Claim 33 must be disallowed in its entirety.

---

degree as determined by the common law, or [any] individual in a step or adoptive relationship within such third degree."

**C. In The Alternative, If Claim 33 Is Deemed To Be Enforceable, Bankruptcy Code Section 502(b)(7) Limits Golish's Recovery Under the Agreement**

28.    Section 502(b)(7) of the Bankruptcy Code provides:

> . . . the court, after a notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds: (a) the compensation provided by such contract, without acceleration, for one year following the earlier of— (i) the date of the filing of the petition; or (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.

29.    Section 502(b)(7) thus sets forth a statutory cap on the recovery of a former employee for the "compensation provided for under the employment contract for the year following the earlier of the date of the petition or the termination of employment" plus unpaid compensation due to the employee on the earlier of the two aforementioned dates.  4 COLLIER ON BANKRUPTCY ¶ 502.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Regardless of whether Claimant asserts such a claim for "termination" or "change in control," applicable law holds that damage provisions in employment contracts arising from a "change in control" covenant are also subject to the 502(b)(7) cap.  *See* Protarga, Inc. v. Webb (In re Protarga, Inc.), 329 B.R. 451, 464 (Bankr. D. Del. 2005) ("Because the October 2003 sale to Luitpold resulted in a change of control, Webb's claim is enhanced by section 7.2 of the Employment Agreement. However, Webb's claim must be reduced as required by § 502(b)(7).").

30.    Regardless of how any actual damages may arise under the Agreement, such damages must be limited in accordance with 502(b)(7).    Therefore, to the extent that the Agreement presents an enforceable obligation of PFF Bancorp, Golish is owed only one year's

compensation plus earned but unpaid compensation that had accrued on the earlier of the Petition Date or the date on which an "Change of Control" occurred (as such terms are defined in the Agreement).[5]

31.    Accordingly, Claim 33 fails to allege an enforceable obligation of PFF Bancorp and should be disallowed in its entirety.  In the alternative, Claim 33 must be limited by the statutory cap of section 502(b)(7) of the Bankruptcy Code.  In the absence of such relief, the Claimant would receive an unwarranted and unjustified recovery to the disadvantage of the other creditors of the Debtors.  Furthermore, as set forth more fully below, the Committee, on behalf of the Debtors' estates, asserts the Counterclaim as a complete defense to the payment of any liability of the Debtors' estates under Claim 33.

### D.  Golish Is Not Entitled to Priority Under 11 U.S.C. § 507(a)(4) for Wages, Salaries, or Commission Up To $10,950.00

32.    Under 11 U.S.C. § 507(a)(4), certain wages, salaries, or commissions up to $10,950.00 are entitled to priority if earned by the individual claimant within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first.

33.    Here, Golish does not provide any evidence or specificity as to why or what portion of his claim is for wages, salaries, or commissions earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first.

34.    Given the total absence of proof offered in connection with the claim for priority in Claim 33, any priority afforded a portion of Claim 33 must be disallowed.

---

[5] Claim 33 does not provide any evidence to substantiate how much, if any, earned but unpaid compensation was owed to Golish on the earlier of the Petition Date or the date on which the "Change in Control" occurred (as such terms are defined in the Agreement).  To the extent necessary, the Committee reserves all rights to issue discovery and conduct evidentiary proceedings in order to ascertain these amounts.

**COUNTERCLAIM**

**FRAUDULENT TRANSFER**

35.    The Committee hereby incorporates by reference Paragraphs 1-34 as if stated at length herein.

36.    As an executive officer and general counsel of PFF Bancorp and PFF Bank, Golish was an "insider" of PFF Bancorp.

37.    Under 11 U.S.C. § 548(a)(1)(B)(iv):

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – … (B) received less than a reasonably equivalent value in exchange for such transfer or obligation; and … (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

38.    Here, PFF Bancorp and Golish entered into the Agreement on September 11, 2007, less than two years before the Petition Date.

39.    PFF Bancorp received less than reasonably equivalent value in exchange for incurring such obligation when it entered into the Agreement on September 11, 2007.  Indeed, the Agreement itself recites that the Debtor was only entering into the Agreement in recognition of past services and the past contributions of Golish "made to the Bank" and because the Debtor wished "to protect Executive's position" therewith for the period provided in the Agreement." No new value or reasonably equivalent value was given by Golish in exchange for the Agreement.

40.    The obligation is for the benefit of an insider pursuant to an employment contract, which, given the financial condition of PFF Bancorp and PFF Bank at the time of the Agreement,

131350.01600/21925381v.3

was not in the ordinary course of business.

41.    Accordingly, any obligation, to the extent owed, under the Agreement to Golish should be avoided as a fraudulent transfer.

## RESERVATION OF RIGHTS

42.    The Committee expressly reserves the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be overruled, the Committee reserves its right to object to Claim 33 on any other ground that bankruptcy and non-bankruptcy law permit.

WHEREFORE, the Committee respectfully requests that the Court: (a) enter a judgment disallowing Claim 33 in its entirety; (b) in the alternative, limit the Claim 33 to one year's compensation; (c) to the extent any potion of the claim is allowed, such claim should be a general unsecured claim not entitled to any priority claim; and (d) grant such further relief as the Court deems just and proper under the circumstances.

Dated: December 4, 2010

**BLANK ROME LLP**

By: /s/ *Regina Stango Kelbon*
    Regina Stango Kelbon (No 5444)
    1201 Market Street
    Wilmington, Delaware  19801
    Telephone: (302) 425-6424
    Facsimile:  (302) 425-6464

    -and-

    Jeremy A. Rist
    Josef W. Mintz
    One Logan Square
    130 North 18th Street
    Philadelphia, PA 19103-6998
    Telephone: (215) 569-5500
    Facsimile: (215) 569-5555

    *Counsel to the Committee*